#### IN THE

## SUPERIOR COURT OF JUDICATURE,

#### FOR THE

## COUNTY OF SULLIVAN, JULY TERM,

#### A. D. 1835.

---

## HOLTON vs. SMITH.

An agent, having a general authority to sell as such, has no right to sell and deliver the goods of his principal in payment of his own debt.

Where the owner of goods delivered them to another, taking from him a bill of them, with certain prices annexed, and a receipt, stating that he had received the goods to sell and account for at the above prices; and the party receiving them sold and delivered them to a third person in payment of a debt of his own, previously contracted—the vendee having notice of the terms on which his debtor received the goods—*held*, that the party so receiving them was merely an agent, that the sale was invalid, and that the owner might maintain trover for the goods.

TROVER for certain harnesses, saddles and bridles.

Upon the trial it appeared that the plaintiff, being the owner of said articles, on the 14th June, 1833, delivered the same to one George Miller, who at the same time executed and delivered to the plaintiff a writing, describing the goods, and affixing prices, and containing a receipt, as follows, viz. : "Rec'd the above saddling, to sell and account for at the above prices."

About the same time a quantity of English goods was delivered to Miller, by a third person, to be sold ; and he went to Bath, where the defendant lived, hired a store, and commenced trading.

On the 3d of July following, Miller bargained for the defendant's tavern stand, and gave his promissory note for the

price, payable in thirty days, and on the 5th of July he sold and delivered to the defendant the greater part of the articles so received of the plaintiff, in part payment of said note. It was a part of the contract of sale that the amount should be indorsed upon the note, and the defendant knew, at the time, that Miller was acting as the agent of the plaintiff in disposing of the property.

A verdict was taken for the defendant, by consent, to be affirmed, or set aside and judgment rendered for the plaintiff, according to the opinion of this court upon the foregoing case.

*H. Hubbard*, and *Holton*, for the plaintiff. A factor to whom goods are consigned, has no property in them, nor will they be affected by his bankruptcy. 2 *Blk. Rep.* 1154.

In 4 *Burr. Rep.* 2046, 50, *Wright & a.* vs. *Campbell & a.* the court were clearly of opinion, that if the purchase was made by the defendant with a knowledge of the agency, it was a fraud upon the plaintiff; which case is cited by Buller, judge, in the 2 *T. R.* 74, as one of the best cases on mercantile subjects.

Where the sale was made by a factor, the purchaser knowing him to be such, but the venders' names were not disclosed, held that the latter might sue for the amount, notwithstanding the factor acted upon a *del credere* commission, and bills had been drawn for the amount, which had never been paid. The giving such commission is in order to obtain an additional security, and not to substitute one for another, nor to vary the rights of third parties. 6 *M. & S.* 166, *Hornby* vs. *Lacy;* 1 *T. R.* 115, *Grove* vs. *Dubois.*

If A deliver lottery tickets to a goldsmith, to receive money for them, and the latter deliver them to B, in discharge of a contract between himself and B, the property is not changed. *Salk.* 284; *B. N. P.* 34.

A factor, although he has power to sell, and thereby bind his principal, yet he cannot bind or affect the property of

the goods by pledging them as security for his own debt— although there is the formality of a bill of parcels, and a receipt. 2 *Strange* 1178; 1 *Henry Bl.* 362; 3 *B. & C.* 38, *Dyer* vs. *Pearson ;* 5 *T. R.* 604; 7 *T. R.* 359.

A person who is employed to sell goods, and is to have, for himself, whatever money he can procure for them beyond a stated sum, is a competent witness to prove the contract between the seller, that is, the principal, and the buyer. 2 *Henry Blk.* 590; 5 *Pick.* 5.

*J. H. Hubbard*, and *Freeman*, for the defendant. The case finds that Miller sold the articles to the defendant, and that he knew, at the time, Miller was acting as agent for Holton, which must mean that he knew Miller was acting under the contract contained in the receipt ; and the question arising in the case, is, whether Miller could sell the goods in payment of a debt of his own, and whether the defendant could so purchase them. It is contended by the defendant that they could.

1. The articles were delivered to Miller to be sold. It was his duty by the contract to sell them.

2. There was no limitation, or restriction, upon such sale.

3. The plaintiff had no interest in the sale, or the price for which they were sold. Miller was to have no commission, or compensation, for such sale.

4. The credit was given by the plaintiff solely to Miller, and the latter could give no credit in behalf of the plaintiff which he would be bound to take.

5. If Miller disposed of the goods, in any way, he was bound to pay for them at a given price. If he did not dispose of them he might return them.

6. If he sold them high it was no benefit, if he sold them low it was no loss, to the plaintiff.

7. In short, the whole credit for the goods was given to Miller. The plaintiff run no risk. The articles were not to be sold on account of the plaintiff, but at the risk, and on account of, Miller.

8. The questions which usually arise between an agent or factor, and his principal and third persons, cannot arise here, and consequently the law on these subjects cannot apply.

A broker, who in the purchase of goods acts under a *del credere* commission, is substantially the vender, and may be considered as the real purchaser. See *Payley on Agency* 42 ; *M. & S. Rep.* 576.

When the factor sells the goods at his own risk, that is, where he is answerable to the owner for the price, he is the debtor to the owner, and not the purchaser. *Bull. N. P.* 130 ; 2 *Strange's Rep.* 1182 ; 1 *T. R.* 112 ; 1 *Camp. Rep.* 444.

PARKER, J.    It is well settled that a factor has no authority to pledge the goods of his principal.   1 *M. & S.* 140, *Martini* vs. *Coles ;* 1 *Starkie's Rep.* 472, *Peet* vs. *Baxter ;* 2 *ditto* 21, *Graham* vs. *Dyster ;* 3 *B. & C.* 342, *Queiroz* vs. *Truman ;* 3 *Bing.* 139, *Williams* vs. *Barton ;* 2 *Mass.* 398, *Kinder* vs. *Shaw.*   In 2 *Bro. & Bing.* 639, *Fielding* vs. *Kymer,* the plaintiffs consigned goods to certain factors, who pledged the goods with the defendants, for the ostensible purpose of raising money to pay bills drawn on them by the plaintiffs, and which were to be provided for out of the proceeds of the goods consigned.    The defendants, who were brokers, afterwards sold the goods, and claimed to retain in payment of their debt, but it was held that they had no right so to do.

Nor has a factor authority to barter.  " And therefore where ' a factor bartered the goods of his principal, no property ' passed, and the principal may maintain trover against the ' party with whom the goods are bartered, although the lat-' ter be wholly ignorant that he had been dealing with a ' factor only."    3 *Barn. & Ald.* 616, *Guerreiro* vs. *Peale.*

So a traveller who receives orders for goods from his employer's customer in the country, is authorized to receive

payment for them in money, but not in other goods. 4 *C. & P.* 508, *Howard* vs. *Chapman*.

A quantity of oats having been consigned by a merchant abroad, to be sold by J. S., who was a merchant as well as factor, he placed them in the hands of A., who was a corn factor, as security for advances made by him, but the oats were not to be sold without the consent of J. S. They remained in A.'s possession, upon these terms, for nine months, when they were transferred to A. by a sale at the market price. No money actually passed, nor was any account of sales rendered, but the amount of the price was allowed in account between J. S. and A., leaving a balance in favor of the latter. It was held that no property passed. 4 *Barn. & Ald.* 443, *Kuckein* vs. *Wilson.* Although the goods were first pledged, they seem, from the statement of the case, eventually to have been sold to the defendant in part payment of his debt.

In 8 *Green.* 38, *Parsons* vs. *Webb*, where one delivered his horse to a private agent, to be sold for the owner's benefit, and the agent sold him to his own creditor in payment of his own debt, it was held that the owner's property was not thereby devested, and that he might maintain replevin for the horse, even against a subsequent vendee.

The principles established in these authorities seem sufficient to settle the present case, unless there is something in the contract under which Miller received these goods, which should make it an exception.

It is argued that from the particular terms of the contract, and the rights of the parties under those terms, Miller must be considered as the vender of the goods, and that he might dispose of them as he pleased, making himself liable for the price stated, if he parted with the property.

But there is nothing in the bill and receipt to distinguish this case from others where goods are consigned to an agent, or factor, to sell, and he is limited to certain prices, except here Miller was to account at certain prices, and was of

course to receive whatever he might realize over and above, as his compensation, instead of accounting for the full amount of the sales, and deducting a commission. But this difference is not essential. There is nothing like a transfer of the goods to him. They still remained the goods of the plaintiff. Miller acknowledged that he had received them to sell and account for. Thus far the case shows that he held them as the plaintiff's goods, to sell for him, and when it is added that he is to account at certain, prices that cannot alter the case. It is admitted that he had a right to return them to the plaintiff.

Miller had an undoubted authority to sell the goods; but it was to sell them, not as his own, but as the goods of the plaintiff; and acting as agent of the plaintiff he had no right to exchange them for other goods, or for his own note. By the disposition he made of them he treated them as his own, and this disposition was not properly a sale, within the meaning of his authority to sell, but a delivery over, at a certain price, in payment of a demand against himself. Although in the nature of a sale, it is in fact a payment of his debt with goods instead of money. If it might also be considered as a purchase by himself, at the same time that will not avail, as an agent has no right to purchase of himself what he is entrusted to sell. 3 *N. H. Rep.* 145.

Had Miller sold, and received the money, he might, to be sure, have squandered it, but that can make no difference. So it might be said that a factor who had pledged to secure a debt from himself, might have sold and afterwards have paid his debt with the money, and the principal be in no better situation. If a principal may be subjected to loss in such modes, it is because he has thus far trusted to the fidelity of the agent, and this furnishes no reason why the law should permit the agent to defraud him in other cases.

If a factor might dispose of the goods of his principal, directly, in payment of his own debt, it would lead to great abuse and fraud, and the well settled rule that he cannot

pledge would be of little utility.    A similar reason exists against both.

Had the plaintiff in truth authorized Miller to act as the owner of the goods, or held him out as such, the argument of the defendant's counsel might be sustained.    1 *M. & S.* 147, *Martini* vs. *Coles ;* 15 *East* 38, *Pickering* vs. *Busk.*

*Verdict set aside and judgment for the plaintiff.*