Benny *v.* Rhodes.

BENNY *et al.*, Respondents, *vs.* RHODES, Appellant.

1.  A. consigned goods to B., a factor, for sale on commission.  B. delivered the goods to C. in payment of his own antecedent debt.  *Held,* A.'s title was not divested.
2.  The circumstance that a factor has a lien on goods consigned to him, for advances, will not authorize him to deliver the goods in payment of his own debt, or to sell them in an unusual and irregular manner.
3.  In an action by a principal to recover goods tortiously delivered by his factor to the defendant, *it was held,* that a payment which had been made by the factor to his principal on a running account of consignments, there having been no appropriation of the payment by the parties to any particular items of the account, would not be applied in satisfaction of the charge for the goods sued for.

*Appeal from St. Louis Court of Common Pleas.*

*Todd & Krum,* for appellant.   1. Rhodes was at least entitled to the benefit of what the plaintiffs owed Love & Osborne for advances and commissions.   A factor has a right to appropriate the property of his principal to the extent of his lien, and this demand was a lien.   15 Mo. Rep. 184.   2. The defendant is entitled to the benefit of the principle that, where there are open running accounts between merchants, the pay-

ments made by the debtor shall be applied in satisfaction of the items of indebtedness against him, in the order of their time. 1 Merivale, 572. 22 Maine Rep. 138. 4 Mason, 333. 5 Mason, 82. 3 Sumner, 98. 11 Leigh, 512. 3. The plaintiffs, by their settlement with Love & Osborne, ratified the sale to Rhodes, and are thereby precluded from claiming the goods.

*T. T. Gantt*, for respondents. 1. The pretended sale to Rhodes having been shown to have been a mere contrivance, by means of which Rhodes sought to appropriate the property of the respondents to the satisfaction of an indebtedness from Love & Osborne to him, no title passed to Rhodes thereby. 2. There can be no deduction from plaintiff's demand against Rhodes, on account of any advances made by Love & Osborne, for the reason that the transaction was a fraud upon the plaintiffs, and a breach of trust, to which Rhodes was a party, and he can take no advantage from it. 3. The principle of application of payments cannot be applied to this case. 7 East, 5. On the whole case, the following authorities are cited : *Warner* v. *Martin*, 11 Howard, 209. *Holton* v. *Smith*, 7 N. H. Rep. 446. *McCombie* v. *Davis*, 7 East, 5. *Daubigny* v. *Duval*, 5 T. R. 604. *Newsom* v. *Thornton*, 6 East, 17. 4 Barn. & Ad. 443. *Queiroz* v. *Trueman*, 3 B. & C. 342.

GAMBLE, Judge, delivered the opinion of the court.

This is a civil action to recover the value of specific articles, the property of plaintiffs, alleged to have been converted by defendant to his own use. The case was tried by the court without a jury, and the facts were found as contained in the deposition of a witness. The goods, for the value of which the suit was brought, were consigned by plaintiffs to Love & Osborne, of St. Louis, for sale ; Love & Osborne being commission merchants. The factors being indebted to the defendant in the amount of a note, were urged by him to make pay-

Benny v. Rhodes.

ment, and he offered to take payment in the goods of the plaintiffs. The factors informed the defendant that the goods did not belong to them, but were the property of plaintiffs and only in their possession for sale as commission merchants. The defendant urging the factors to sell him the goods in payment of their note, at last prevailed over their scruples, and the articles were sold to defendant and the note of the factors satisfied and delivered up. At the time of this transaction, the factors, as consignees of the goods, had paid out money for freight and charges upon the goods. There was a memorandum of sales sent to plaintiffs by the factors, in which the amount of the goods sold to the defendant was included, but no regular account of sales was rendered for several months after the sale. In that account, the sale to defendant was stated. In the mean time, the plaintiffs had drawn bills upon the factors which had been accepted, and one of them, for an amount exceeding the value of the articles which the defendant had received, had been paid by the factors. When the account of sales was rendered, the factors were indebted to the plaintiffs. The plaintiffs demanded the property of the defendant, claiming that, under the circumstances, their title had not been divested.

1. As the title to the property was in the plaintiffs, the question is, whether it has been divested, and if it has, by what act, and when? The transaction in which the defendant obtained the plaintiffs' goods, was with an agent, and it was requisite, in order that the principal should be bound, that the authority of the agent, whether express or implied, should be pursued. The agent was entrusted with the goods of the principal for the purpose of sale for the benefit of the principal. In the absence of particular instructions, the agent was authorized to sell according to the usual mode of dealing in the particular trade which he was conducting. In such case, he might sell on credit, if sales on credit were customary in that trade and at that place. If he sells in an unusual manner, not warrant-

ed by the custom of the trade, and without express authority, the principal is not bound by his act. An agent for sale cannot barter the goods of his principal, nor can he pledge them. The law, that a factor cannot pledge the goods of his principal, was declared in *Patterson* v. *Tash*, 2 Strange, 1182, and has been followed by a long train of decisions in England, so that it became necessary to resort to parliament to change the law, as was done by 4 Geo. 4, c. 83. 6 Geo. 4, c. 94; and 5 and 6. Vict. chap. 39. The same doctrine is maintained in the states of this Union, and in some of them statutes have been passed to. alter it in some respects, as in England. In the cases in which courts have been called on to examine the power of the factor to affect the title of the principal, the true nature and design of the transaction has been regarded, and where it appeared that the substance of the arrangement was a pledge of the property, however it might be disguised under the appearance of a sale, the right of the principal was protected. In *Holton* v. *Smith*, 7 N. H. Rep. 446, it was held, that an agent, having the goods of his principal to sell, could not sell them to his own creditor in payment of his own debt, so as to pass the title. In answer to the suggestion that the agent might have sold the goods and received and squandered the money, and so the title would have passed and the principal have been without remedy, except as against the agent, the court remarked : "If a principal may be subjected to loss in such modes, it is because he has thus far trusted to the fidelity of the agent, and this furnishes no reason why the law should permit the agent to defraud him in other cases." In *Warner et al.* v. *Martin*, 11 Howard's Rep. 226, the Supreme Court of the United States says : "When a contract is proposed between factors, or between a factor and a creditor, to pass property for an antecedent debt, it is not a sale in the legal sense of that word, or in any sense in which it is used in reference to the commission which a factor has to sell. It is not according to the usage of trade. It is a naked transfer of property in payment of a debt.

Benny *v.* Rhodes.

Money, it is true, is the consideration of such transfer, but no money passes between the contracting parties. The creditor pays none, and when the debtor has given to him the property of another, in release of his obligation, their relation has only been changed by his violation of an agency which society, in its business relations, cannot do without. When such a transfer is made by a factor, for his debt, it is a departure from the usage of trade, known as well by the creditor as it is by the factor. It is more ; it is a violation of all that a factor contracts to do with the property of his principal. It has been given to him to sell. He may sell for cash or he may do so upon credit, as may be the usage of trade. A transfer for an antecedent debt is not one thing or the other; both debtor and creditor know it to be neither." These cases only apply the rule, that " the factor, in order to pass the title of his principal, must sell the property according to the usages of trade," to the facts which were presented to the courts. They are not new in principle. Applying that rule to the case now before us, it is clear, that the pretended sale to Rhodes did not divest the title of the plaintiffs, as a regular sale within the scope of a factor's authority. But if it has subsequently been confirmed by the principal, it will be equally effectual. Now there is no pretence, from any fact found by the court below, or in the evidence given, that the plaintiffs ever knew or suspected the real character of the transaction between Rhodes and their agent, during the continuance of the agency ; or that, after they came to the knowledge of the facts, they did any act to approve or ratify it.

2. But it is insisted that the factors, having a lien upon the goods, for the amount of their advances made previous to the sale to Rhodes, were authorized to sell for their own reimbursement, and might, to the amount of their advances, sell on their own account and for the satisfaction of their own debt to their creditor, Rhodes. To this it might be replied, that the facts found by the court show that the transaction between

HARVARD LAW SCHOOL LIBRARY

Rhodes and the factor was not a sale under any such assertion of right by the factor. Again, the factor cannot dispose of the goods of his principal in an unusual mode, even to reimburse his charges. The case of *Graham et al.* v. *Dyson*, 2 Starkie's Rep. 23, is a very strong case to show that the factor cannot pledge goods to raise funds for the purpose of meeting bills drawn by the principal, or of reimbursing advances made upon the goods. So, in *McCombie* v. *Davies*, 7 East, 6, it was held, that a person taking goods in pledge from a factor could not avail himself of the right which the factor had to retain the goods under a lien for advances, the pledge of the goods being, in respect to the principal, a tortious act. Although a factor may sell, to reimburse his advances, so much of the consignment as is necessary for that purpose (*Brown* v. *McGran*, 14 Peters' Rep. 495,) yet, such sale is to be in the usual mode. In the present case, the amount turned over to Rhodes largely exceeded the amount which had been paid for freight and drayage, and was delivered to him at cash prices, while it was to be reported to the plaintiffs as a sale at six months, so as to give the factor time in his account with his principal. This contrivance was the suggestion of Rhodes, and was discussed and agreed upon between the parties. It was not, in the understanding of either party, a sale on account of advances made, but a mere tortious appropriation of the goods of the principal. It was not, according to the opinion in *Warner et al.* v. *Martin*, a sale in the proper sense of that term.

3. It is next insisted that, as the factor has accepted and paid a bill of the principal, drawn on account of the consignment, which exceeds, in amount, the value of the goods delivered to Rhodes, and there has been no appropriation of that payment to any particular items of the account between the principal and factor, it ought to be appropriated to the satisfaction of the charge arising from the sale to Rhodes. This being an action for the recovery of the value of property al-

leged to have been tortiously delivered by the factor to Rhodes, the position here assumed is, that, although the title to the property did not pass by the transfer of it made to Rhodes, yet, the court will, by a rule for the application of payments, exempt Rhodes from his liability to the plaintiffs and sanction the contrivance between him and the factor, by holding that the principal has been paid for that part of his property, consigned to the factor, which Rhodes obtained, and that the loss sustained by the failure of the factor, is a loss upon the articles subsequently sold. Now the authorities do not justify the application of any such rule to this case; for, first, the account of sales rendered to the plaintiffs, is not on the record, and, therefore, we do not know what place the transaction occupies in it; second, the memorandum of sales, which was sent to the plaintiffs, has no sale corresponding in date or amount with the pretended sale to Rhodes ; and, thirdly, if the account did show a sale as having been made to Rhodes at six months, we would allow no ingenious use of the general rule upon which courts apply payments, to operate a change of title to the plaintiffs' property, which, before the payment, was still in the plaintiffs, and had been converted by Rhodes. In other words, unless the plaintiffs had received payment for their whole consignment, they will not be held bound by the transaction between their factor and Rhodes, of the true nature of which they were not informed. Rhodes, as wrongfully in the possession of their property, can only hold it by their ratification of the factor's act, or by their being satisfied for the whole consignment. If both parties omit the application of payments, the law will apply them according to justice. 9 Wheat. 737. 11 Leigh, 516.

The judgment is, with the concurrence of the other judges, affirmed.