ROBINSON v. WILLIAM D. CLEVELAND & SONS. (No. 7764.)

(Court of Civil Appeals of Texas. Galveston. Nov. 11, 1919.)

1. FACTORS ⬥23—SALE OF COTTON FOR ADDITIONAL MARGIN CONTRARY TO SELLING INSTRUCTIONS.

Where cotton factors, who had made advances against cotton held subject to selling instructions from owner under owner's agreement to send additional margin for factor's protection, sold certain amount of cotton for purpose of increasing margin after reasonable notice to owners and upon owner's failure to send additional margin, factors were not liable to owner for making such sale contrary to selling instructions.

2. FACTORS ⬥43—SUFFICIENCY OF INSTRUCTION IN ACTION FOR UNAUTHORIZED SALE.

In action against cotton factors for sale of cotton contrary to selling instructions, where defense was that sale was necessary to give factors, who had made advances on cotton, sufficient margin for their protection, instruction held not subject to objection that it permitted factors to demand unreasonable additional security.

3. FACTORS ⬥39—OWNER'S RATIFICATION OF UNAUTHORIZED SALE.

Where factors sold cotton contrary to selling instructions for purpose of increasing margin for their security, owner, who accepted proceeds of sale without express or tacit understanding that he was accepting such amount as a credit upon any damages he may have sustained leaving a right of action still subsisting, will be held to have affirmed sale.

Appeal from District Court, Harris County; Robt. L. Cole, Special Judge.

Action by R. J. Robinson against William D. Cleveland & Sons. Judgment for defendants, and plaintiff appeals. Affirmed.

McMeans, Garrison & Pollard, of Houston, for appellant.

Hutcheson, Bryan & Dyess, of Houston, for appellees.

GRAVES, J. During the latter part of 1916, R. J. Robinson, who was buying and selling cotton at Lockney, Tex., shipped from that point, in several different consignments, an aggregate of 569 bales of cotton to Wm. D. Cleveland & Sons, cotton factors, at Houston, Tex. In doing so he drew drafts on account for each shipment, with bills of lading for the cotton attached, for a certain proportion of its value, called "advances," which the factors at Houston paid on presentation. The difference between the amount thus "advanced" or loaned on the cotton by the factors and its market value at any particular time was termed a "margin," and, since Mr. Robinson was not shown to be otherwise responsible, the amount of this margin in his case bore direct and constant relation to the security of his factors for the sum they had so let him have.

In sending these consignments, Robinson knew the customs among cotton shippers that factors sometimes required margins, and further, to quote his own language:

"Where they make advances on cotton, they do not require a margin unless the market declines. They will not lend you the full value of the cotton when you ship it in. The difference between the full value, the amount that they lend you, and the market value, is called a margin. If the market declines so that they haven't got a sufficient margin, they require the shipper to make an additional deposit, or an additional shipment, to make an additional margin. I am familiar with the custom and rule. I knew that at the time I shipped to Cleveland & Sons."

On October 6th, when sending 112 bales of the 569 in question, Robinson drew at the rate of $70 per bale, and wrote Cleveland & Sons that he desired to hold his cotton, ask-

ing their opinion of the market, and their advice as to holding or selling. In replying, in addition to answering his inquiries, they stated that they would "carry the cotton carefully protected, awaiting your later selling instructions." On October 12th, in acknowledging receipt of draft and bill of lading for a later installment of 60 bales, upon which $70 per bale had likewise been drawn, they wrote him:

"When the shipment comes to hand we shall forward report of weights and grades and carry your cotton carefully protected, awaiting your selling instructions, when our utmost efforts will be exerted to please you."

About December 9th, Robinson sent the last of the 569 bales, a shipment of 79 bales, drawing upon it $75 per bale.

When this last draft reached them, Cleveland & Sons protested at the amount of it as being excessive for the character of the cotton sent, and advised Robinson of their purpose to sell the 79 bales after arrival, unless in the meantime he reduced the amount advanced thereon by sending other cotton or remittance. Later, on December 20th, they not only reiterated this demand and notice as to the 79 bales, but further definitely advised him that his entire account on that date showed a margin of only $5 per bale, that under then prevailing uncertain market conditions they could not longer hold his cotton, and would conclude that they had his consent to sell it after 10 o'clock on December 23d, if an additional margin of $2,500 was not by that time in hand.

Negotiations and communications back and forth with reference to additional margin then continued until January 2, 1917, the details of which need not at this point be gone into, but during and as a result of them the parties mutually agreed upon 40 bales of cotton for additional margin, in lieu of a money remittance. Then Cleveland & Sons about noon on January 2d, wired Mr. Robinson's bank:

"No bill lading covering shipment of 30 bales promised in your wire December 29th. Unless railroad agent wires us immediately that 30 bales are en route to us and 10 bales have been consigned today, we shall sell R. J. Robinson's cotton first opportunity after four o'clock this afternoon."

No such wire reached them by the time named, and after 4 p. m. of that day they sold the cotton at the prevailing market price. On January 4th Mr. Robinson reached Houston, and, with representatives of the Cleveland firm, went fully over the matter of his account and the sale of his cotton, following which, on the next day, January 5th, the firm mailed him an account sales, inclosing draft for more than $4,000 to cover the net proceeds after deduction for advances, interest, and expenses, which he received, accepted, and used. He made no objection to the sale of his cotton at the time, nor indeed until he filed this suit on August 18, 1918.

On the date last mentioned, he brought this suit against Cleveland & Sons, alleging that they had breached their contract with him in selling the 569 bales without first obtaining his permission to do so, and laying his damages at the difference between the price for which they sold the cotton and its highest market price between that date and the filing of the suit, or a sum in excess of $28,000.

The defendants in reply, after excepting to the measure of damages thus declared on, denied that they were under any contract to hold the cotton unless a sufficient margin thereon was kept with them to protect them against loss, set up facts relied upon as justifying the sale at the time and under the circumstances made, including a custom and usage among cotton factors at Houston to sell for the best price obtainable whenever the owner upon demand failed to put up a reasonable margin upon his cotton, which custom and usage it was charged Robinson well knew, and further that he, with full knowledge of all the facts, ratified their act in so selling his cotton.

The cause went before a jury upon special issues; the first one, which we think laid the subsills of the entire case, being this:

"Was the notice given to, and requirement made of, the plaintiff, R. J. Robinson, by the defendants, Wm. D. Cleveland & Sons, that unless they had a telegram from the railroad agent at Lockney by 4 p. m. of January 2, 1917, to the effect that 30 bales of cotton were en route to them, and 10 bales had been consigned that day, a reasonable or an unreasonable notice to, and requirement of, the plaintiff, in point of time?

"You will answer, 'It was reasonable,' or, 'It was unreasonable,' as you find the fact to be.

"In connection with the foregoing special issue, the court instructs you that where a cotton factor receives cotton shipped by his principal, and the factor makes no advances against the same, and where the cotton is shipped under an agreement that it will not be sold except under instructions of the principal, that then the factor is bound to obey the instruction of his principal, and is liable for any departure therefrom. If, however, the factor makes advances against the cotton, he has the right to require additional margins whenever he in good faith believes the condition of the market is such as to require additional margins for his protection, and if he makes such a requirement, and the principal fails to comply therewith upon being given a reasonable notice and time within which to comply therewith, then the factor has the right to sell the principal's cotton for the purpose of reimbursing himself for the advancements made for him, although there was an agreement between the factor and the principal that the factor would not sell the

cotton except upon the instructions of the principal.

"It is undisputed in this case that the parties had agreed on an additional margin of 40 bales of cotton, and the only point for you to determine is with regard to the reasonableness or unreasonableness of the time notice within which the defendants gave the plaintiffs to comply with the requirement as inquired about in the foregoing special issue No. 1.

"In answering this special issue, you are instructed that you may look to all of the facts and circumstances in the case. Bearing in mind these instructions, you will answer the following special issue as you find the fact to be.

"If you have answered the foregoing special issue to the effect that the notice was reasonable, you need not answer any of the following special issues, but, if you answer that it was unreasonable, then and only in that event you will answer the following special issues."

Then follow several others, which were not answered, but the court subsequently directed an answer to the sixth, regardless of how the first had been answered, it being as follows:

"Did the plaintiff, after defendants had sold his cotton, ratify or acquiesce in the acts of the defendants in the sale of the same?

"In connection with the foregoing special issue, the court instructs you that if you should find from the evidence that after the sale was made the plaintiff came to Houston, and after having knowledge of all the facts in connection with the sale of his cotton, made no objection thereto, or that he accepted the same, or if you find that he afterwards accepted the proceeds of the sale of the cotton with the then intention of not further urging any claim, if any he might have, against the defendants, then you will answer the foregoing question in the affirmative; on the other hand, if you should find from the evidence that the plaintiff, while in Houston immediately after the sale, objected to the sale, and did not accept same, and so advised the defendants, and if you find that in accepting the money he did not intend to waive any claim, if any he had, against the defendants, then you will answer the foregoing question in the negative.

"Bearing in mind these instructions, you will answer the foregoing question, 'Yes,' or, 'No,' as you find the facts to be."

Both the issues thus submitted were answered in the affirmative, whereupon judgment was entered for defendants, and plaintiff appeals.

[1] As just intimated, we think issue No. 1 went to the very base of appellant's suit, and that the jury's determination of it against him by finding that the notice to and requirement of him therein specified was a reasonable one, under all the facts, conditions, and circumstances in evidence, left the court no alternative than to enter the judgment it did. The chief complaints made in the assignments of error—aside from insistence that the issues presented should have gone to the jury differently in a number of particulars—are against issue No. 1 as not em-

bodying the idea that the factor cannot demand an unnecessary or unreasonable margin, and of the court's refusal to submit other proffered issues inquiring as to whether the 40 bales constituted a reasonable or sufficient margin.

[2] The answer to these contentions lies: First, in the fact that—as the court in this first issue instructed the jury and the undisputed testimony showed—the parties had expressly agreed upon the 40 bales as a proper margin, thereby eliminating all question as to its reasonableness or sufficiency; and, second, in that the charge does not, we think, when properly construed, inform the jury that the factor could require additional margin without reference to whether or not it was reasonably necessary for his own protection. Upon the contrary, we think the idea that the demand must be a reasonable one inheres in the very language of the charge, when the court says the factor "has the right to require additional margins whenever he in good faith believes the condition of the market is such as to require additional margins for his protection." Protection in such a situation could mean no more than enough added value to prevent the market price on the cotton in hand from falling below the amount then outstanding against it, and, if the factor could not even demand that unless and until he in good faith believed the condition of the market actually required it, there was no way left in which he could still demand a greater amount than was reasonably necessary to protect himself, as appellant contends; in other words, the charge as given included the idea that the request for additional margin should not be an unreasonable one.

Appellant in the proposition under the eleventh assignment at page 34 of his brief concedes that, to quote his own well-stated language—

"A cotton factor who makes advances of money to his principal upon cotton shipped to him, and who receives and holds such cotton upon an agreement not to sell without his principal's instructions, may, nevertheless, sell the same when the price of cotton falls to a point where the principal's cotton in his possession is not of value reasonably sufficient to protect him for the advancements, provided he first calls upon the principal for sufficient margin to reasonably protect him against loss and the principal fails to respond."

So that it becomes unnecessary to discuss the right of the appellees to sell in this instance, since the uncontroverted proof was that he failed to meet a requirement a jury of his peers, after considering all the attendant facts and circumstances, said was a reasonable one; but a few of the authorities upholding this right under the conditions given may be cited: 11 R. C. L. 767;

Davis v. Kobe, 36 Minn. 214, 30 N. W. 662, 1 Am. St. Rep. 663; Benny v. Rhodes, 18 Mo. 147, 59 Am. Dec. 293 and note; Phillips v. Scott, 43 Mo. 86, 97 Am. Dec. 369; Howard v. Smith, 56 Mo. 314; Marfield v. Douglas, 3 N. Y. Super. Ct. 360; 12 Amer. & Eng. Ency. of Law, 560.

While the opinion might properly end here, it may not be without value to add that we think the trial court's judgment could also properly be affirmed upon the question of ratification, under the jury's finding in answering the sixth special issue.

While the form of that issue is criticized as being a charge upon the weight of the evidence, and as singling out and giving undue prominence to particular facts, there is not— nor could there reasonably be—any claim that the jury's finding thereon did not have support in the testimony. Indeed, the facts stated at the outset were not only amply proven, but in addition it was undisputedly shown that, while Mr. Robinson was in Houston on January 4th, Mr. Cleveland obtained the consent of the purchaser of the cotton to even then turn it back to Mr. Robinson, in case he so arranged with the appellees, so that he would be in the same position as before it was sold; but he did not want that done, did not want the cotton redelivered to him.

[3] To say the least of the state of the record upon the ratification issue, there was at the time appellant, in the circumstances recited, received the proceeds of the sale, neither express agreement nor tacit understanding that he was accepting that much as a credit upon any damages he may have sustained through the sale, leaving a right of action for any balance still subsisting; and in consequence he will be held to have affirmed the sale. Mechem on Agency, 146– 149; 11 R. C. L. 764; Graves v. Bains, 78 Tex. 92, 14 S. W. 256; Graves, Headley & Co. v. Cord (Ky.) 44 S. W. 665; Smith v. Boyce et al., Dud. (S. C.) 248; Richmond Mfg. Co. v. Starks et al., 20 Fed. Cas. 747, No. 11802; Meyer v. Morgan, 51 Miss. 21, 24 Am. Rep. 617; Horst v. Lightfoot, 103 Tex. 643, 132 S. W. 761.

It is further insisted that the court committed reversible error in affirmatively instructing the jury that the burden of proving ratification of the sale—a defensive issue of which appellees were the proponents —was upon appellant. It is apparent from the record, we think, that this was seeming rather than real (a purely clerical error), of which neither the court nor the jury was cognizant and by which neither was misled. In the formulation of the issues certain ones had been stricken out and others added, without readjustment of their numbers, so that issue No. VI in reality no longer existed, and No. VII, which properly

placed the onus of establishing ratification upon the appellees, had taken its place.

All assignments presented have been carefully considered; but, under the conviction that none point out reversible error, the judgment is affirmed.

Affirmed.