BUCKLEY <em>against</em> PACKARD and others.

THIS was an action of *assumpsit*, to recover the amount of merchandise shipped by the plaintiff to *Havanna*, and vessel bound to the *Havanna*, for sale : The master, on his arrival at *Havanna*, delivered the goods to the defendants, commission merchants there, for sale : *Held*, that the master having no authority to pledge the goods for his own account, the defendants, by receiving the goods, with knowledge that they belonged to the plaintiff, became substituted, as factors or agents, in place of the master, and were accountable for the proceeds to the plaintiff; and could not retain them for any advances made by them to the master, or for a balance of an account arising from transactions between them and the master.

ALBANY, January, 1823.

BUCKLEY v. PACKARD.

The plaintiff, a merchant in *New York*, consigned goods to the master of a

there received and sold by the defendants, partners, under the firm of *Packard & Gowen*, on commission. The cause was tried at the *New-York* Sittings, in *June*, 1821. On the 16th *June*, 1817, the plaintiff, at *New-York*, shipped on board of the brig *Mary, Francis Smith*, master, bound to *Havanna*, five bales of merchandise, consigned to the master, for sale. On the arrival of the goods at *Havanna*, they were placed in the hands of the defendants, as commission merchants, to be sold. After the goods were so received, the defendants, on the 9th *August*, 1817, shipped on board of the brig *Mary*, a quantity of sugars, amounting to 2563 dollars and 75 cents, for account of the plaintiff, and consigned to the master ; and on the arrival of the vessel at *New-York*, the sugars were delivered to the plaintiff. On the 21st *October*, 1817, the plaintiff shipped two bales of cloths on board of the same vessel, bound for the *Havanna*, consigned to the same master, for sale ; and who, on his arrival at *Havanna*, delivered the goods to the defendants, to be sold. On the 12th *December*, 1817, the defendants wrote to the plaintiff, mentioning that Captain *Smith* had placed the cloths of the plaintiff in their hands for sale, but that they could not then be sold without a great loss, and requesting instructions. The plaintiff, in his answer, dated the 7th *March*, referred it to the judgment of the defendants, as to the best time for selling the cloths. Several letters passed between the parties on the subject ; and on the 21st *December*, 1818, the defendants informed the plaintiff, that they had sold his cloths, and that the account of sales should be made up and rendered to him by the next vessel. On the 4th *February*, 1819, the defendants wrote to the plaintiff, saying, that they enclosed the account of sales of the cloths and cassimeres, per the brig *Mary*, nett proceeds, 3231 dollars and six eighths, and 1447 dollars and three eighths to credit of the account of the deceased Captain *Smith*. " Having received the goods from him, and charged him with all the advances made, as well as many other articles, which are blended in his accounts, it becomes impossible for us to pay over proceeds of any one article to other persons than his executors, to whom you will apply for any balance that may be due you." That they did not know who administered to

his estate, nor to whom they were to pay over the amount appearing to his credit in account, about 900 dollars. It was admitted, that *Smith*, the master of the brig *Mary*, died the 10th *February*, 1818, at *Norwich*, in *Connecticut*, insolvent. Soon after his death, the defendants sent their account against him, to his administrator, and claimed a balance of 3780 dollars; that about three months afterwards, *Gowen*, one of the defendants, called in person on the administrator, and demanded payment; the administrator objected, that he understood that the defendants had a large amount of property on hand belonging to Captain *Smith*, of which they had rendered no account, to which *Gowen* replied, that the defendants had a large amount of goods left in their hands by *Smith*, not belonging to him, but to other persons; and that this could not vary the balance against *Smith's* estate, as they must account to the owners of the property for it, and not to the representatives of *Smith*.

The jury found a verdict for the plaintiff, for 2464 dollars and 47 cents, (being the balance, including interest, between the nett amount of the sales of the goods delivered to the defendants, and of the sugars received by the plaintiff,) subject to the opinion of the Court, on a case containing the facts above stated. It was agreed, that if the Court should be of opinion that the plaintiff was not entitled to recover such amount, but should consider that he was entitled to recover the balance of 920 dollars, admitted by the defendants in their account with Captain *Smith*, then the verdict was to be reduced accordingly, with interest on that amount, from the 31st *December*, 1818. But should the Court be of opinion that the plaintiff was not entitled to recover either of those sums, then a verdict was to be entered in favour of the defendants.

*Ely* and *M'Coun*, for the plaintiff, made the following points: 1. That *Smith*, the master, to whom the plaintiff had consigned his goods for sale, could only delegate his power for the purpose of a sale, for the account of the plaintiff.

2. That, as the factor or agent of the plaintiff, he could not pledge the goods for advances on his own account, or

as security for any debt owing from him to the defendants. (*Guy* v. *Oakly*, 13 *Johns. Rep.* 332 .)

3. That the defendants did not receive the goods in pledge, but as factors of the plaintiff, to be sold on his account; and they were recognised and adopted by him, as his agents, in the place of *Smith*.

4. The defendants acquired no lien upon the goods, or the proceeds thereof, except for advances made by them to the plaintiff; and had no right to apply the proceeds to the payment of their demand against *Smith*. (*Martin* v. *Coles*, 1 *Maule & Selwyn*, 140. *Shipley* v. *Kymer*, 1 *Maule & Selw.* 484. 2 *Maule & Selw.* 298, 301. note. *Post* v. *Kimberly*, 9 *Johns. Rep.* 476. 505, 506.)

5. But if the defendants ever had any lien, for any debt due them from *Smith*, they, by their subsequent conduct, waived that lien. (*Walker* v. *Birch*, 6 *Term Rep.* 258. *Maber* v. *Massias*, 2 *Bl. Rep.* 1072. *Weymouth* v. *Boyer*, 1 *Vesey*, jun. 416.)

*H. & R. Sedgwick*, contra, contended, 1. That from the course of dealing between the defendants and *Smith*, the consignee and factor of the plaintiff, of which the plaintiff was informed, at the commencement of the transactions between them, the defendants had a right to keep their accounts exclusively with *Smith*.

2. That the plaintiff was, therefore, not entitled to recover at all; but, if any thing, it could be no more than the balance due from them, the defendants, to the estate of *Smith*, being 920 dollars.

They cited *Drinkwater* v. *Goodwin*, *Cowp.* 251. *Patterson* v. *Grandesequi*, 15 *East*, 62. *Ex parte Hartop*, 12 *Vesey*, 352.

WOODWORTH, J. delivered the opinion of the Court.

The goods were shipped and consigned to *Smith*, for the purpose of sale, at *Havanna*. The act of the agent is binding on the principal, so far as it is within the scope of his authority. Not being able to effect a sale, *Smith* delivered the goods to the defendants to sell, and here his authority ceased; for, after such delivery, the defendants became agents and factors

of the plaintiff, with notice that the goods belonged to him. This is manifest, by their sending the sugars, on the return of the brig, *for the account of the plaintiff*, as well as by their subsequent communications. *Smith* could not pledge the goods for his own debt already accrued, nor for advances on his own account. He could only sell for the plaintiff. After delivery to the defendants, they were substituted in his place. A factor has no authority to pledge, whether the person to whom he pledges has, or has not a knowledge of his being factor. *Smith* had authority to sell, and, in that situation, he put the goods into the hands of the defendants, as brokers, to sell; and so far he had authority. If the defendants had made advances to *Smith*, on the goods, before the sale, they subjected themselves to all risks. The defendants, who cannot have a better title than *Smith*, had no right to retain the goods, or the proceeds of them, in respect of their advances. These principles are fully recognised in *Martin* v. *Coles*, (1 *Maule & Selw.* 140.) The present is a much stronger case for the plaintiff, for the defendants *knew* that he was the owner of the goods, and treated with him as such. So, also, in *Shipley* v. *Kymer* and others, (1 *Maule & Selw.* 484.) the plaintiffs shipped sugars under a bill of lading, which expressed that they were on account of the plaintiffs, and to be delivered to their agent in *London*, who endorsed the bill of lading to the defendants, and drew bills on them for the amount, which the defendants accepted and paid; and, afterwards, having sold the sugars, they carried the amount of the proceeds to the credit of the agent, who, after the sale, had become bankrupt; it was held, that the plaintiffs were entitled to recover the proceeds of such sale from the defendants. The principles applicable to the present case, are, also, recognised in 2 *Maule & Selw.* 298. 301, and 9 *Johns. Rep.* 476.

But, admitting, on general principles of law, that the defendants would have a lien, it seems to me they did not intend to insist on it. The correspondence between the parties, the various instructions from the plaintiff, as to the sale, and the manner of remitting the proceeds, and the promise to render to the plaintiff an account of sales, satisfactorily show, that the defendants considered themselves accountable to the plain-

tiff, and not to *Smith*. The application by the defendants, to the administrator of *Smith* for payment, does not, I admit, devest the lien, if any existed; but it is strong evidence to show that the defendants did not rely on a lien, but considered themselves answerable to the owners of the goods. This application was made a considerable time after the 24th *February*, 1819, when the defendants first apprized the plaintiff that the proceeds were placed to the credit of *Smith*. The plaintiff, also, applied to the administrator for payment. The defendants refused to pay, and referred him to *Smith's* estate. Such application was no waiver of the claim against the defendants; it is an *immaterial circumstance*. If the plaintiff could obtain satisfaction from *Smith's* estate, it would supersede the necessity of compelling the defendants to do him justice; but the administrator refused, and insisted that he had no claim against *Smith*. It appears in evidence, that the uniform course of the defendants had been to credit *Smith* with the proceeds of goods received from him, without reference to whom they belonged, and the amount of all return shipments was debited to him by the defendants. With this the plaintiff had no concern, nor can his rights be affected by the manner in which the defendants transacted their business. It may have conduced to their convenience, or they may have adopted this practice under a mistaken impression that they were accountable to *Smith* only. Whatever may have been the motive, it cannot change the liability incurred, or exonerate the defendants. We are, therefore, of opinion, that judgment must be entered for the plaintiff, for the amount of the verdict.

Judgment for the plaintiff.