## GLIDDEN et al. v. LUCAS et al.

The plaintiffs, merchants in Boston, shipped merchandise by their own ship to H. F. C. & Co., of San Francisco, to be sold by the latter, who were to receive one-half of the net profits in lieu of commissions; the bill of lading stated, that the goods were "shipped by order," and were to be delivered to "order or assigns," he or they paying freight, and was signed by plaintiffs for captain, and further showed on its margin that plaintiffs had regular agents at San Francisco. The bill of lading was forwarded to H. F. C. & Co., who endorsed and pledged it to defendants for a loan; the defendants received the goods, and sold them; the purchase-money of which, was sought to be recovered in this action : *Held*, that as the defendants had no knowledge that plaintiffs were the owners of the goods, and as there was nothing in the bill of lading to put them on inquiry, and as the possessor thereof had exclusive control over the property, they were entitled to judgment.

Where there is nothing in the business of consignees to make them technical factors, third parties are not bound to know that they acted as factors in a particular case.

APPEAL from the Superior Court of the city of San Francisco.

This was an action of money had and received, to recover the purchase-money of three hundred kegs of lard. The case, by consent, was tried before the Court, who found the following facts :

1. That on the twenty-third day of February, 1856, the plaintiffs, by order of H. F. Cutter & Co., shipped, per ship Goddess,

a vessel belonging to the plaintiffs, three hundred kegs of lard, to said Cutter & Co., at San Francisco, to be sold by them on joint account, and, at the same time, remitted to said Cutter & Co., a bill of lading for the shipment. The bill of lading was signed by the plaintiffs, in lieu of the captain, and showed that Flint, Peabody & Co., of San Francisco, were their agents, and that the lard was shipped "by order," and did not disclose the fact that the plaintiffs owned the lard.

2. That H. F. Cutter & Co., on receiving the bill of lading, assigned and transferred it to the defendants, Lucas, Turner & Co., who, on the arrival of the ship, presented the same to Flint, Peabody & Co., and received the goods, sold them at auction, and received the proceeds.

3. That about the time the ship arrived, H. F. Cutter & Co. failed, when, at their request, Messrs. Morgan, Hathaway & Co. demanded for the plaintiffs the lard or proceeds.

4. That the assignment and transfer of the bill of lading to the defendants was made as collateral security, for money borrowed of them by H. F. Cutter & Co., and that the defendants had no notice at the time they took the same, that the plaintiffs had any interest in the lard.

There was testimony going to show that the business of H. F. Cutter & Co. was not exclusively a commission business. The Court rendered judgment for the defendants. The plaintiffs moved for a new trial, which being denied, they appealed.

*Halleck, Peachy & Billings* for Appellants.

1. The respondents claim title to the lard, solely by virtue of the endorsement and delivery of the bill of lading to them by H. F. Cutter & Co.; but this was no valid transfer of the property, H. F. Cutter & Co. not being entitled, by the terms of the bill of lading, to pass any title by their endorsement.

The mere possession of a bill of lading, requiring the endorsement of the shipper, and not endorsed by him, ought not to induce any one to believe that the holder is authorized to dispose of the goods, and gives the holder no power to endorse over the bill of lading. Abbott on Shipping (6 Am. ed.,) 637, 647, 409.

2. H. F. Cutter & Co. had no authority from the appellants to pledge the property in question—they being mere factors, and having no external evidences of title or apparent ownership.

The cases are numerous to show that a factor cannot pledge, and the recent decision of this Court is to the same purport, and confirms the view we have taken. Hutchinson *v.* Bours et al., 6 Cal., 383; Newson *v.* Thornton, 6 East., 16; Martin *v.* Coles, 1 M. & S., 140; Boyson *v.* Coles, 6 M. & S., 14, 24; Meyer *v.* Sharpe, 5 Taunton, 74; Smith *v.* Watson, 2 B. & C., 401; Oniroz *v.* Trueman, 10 E. C. L. Rep., 161; Fielding *v.* Kymer, 6 E. C. L. Rep., 309; Story on Partnership, 43, 48, 49, 50, 51.

SUPREME COURT—JANUARY TERM.

*S. M. Bowman* for Respondents.

The first proposition is maintained on the idea of the old common law rule, that a factor may sell but cannot pledge the goods of his principal for his own debt. According to that rule, a factor could sell the goods of his principal, and immediately apply the proceeds to his own private purposes, and the vendee would acquire title; but if he undertook to do less than confiscate the whole property, if he left an equity of redemption undisposed of for the benefit of his principal, then the pledgee or assignee acquired no title whatever, and the principal could take the goods.

It is said this rule, so repugnant to all reason and common sense, had its origin in the case of Patterson *v.* Tash, 2 Str. Rep., 1178, which was a *nisi prius* decision of Lee, C. J., which, it is believed, was incorrectly reported, and which the English judges have found it difficult to maintain. In Williams *v.* Barton, 3 Bing. R., 139, Best, C. J., expressed himself strongly in favor of the policy of allowing the pawnee of goods to hold against the real owner, who permitted the pawner to deal with the property as if it was his own. He insisted, the old law on this subject was not adapted to the present commerce of the world. See note, 2 Kent, 803.

In 1823, the merits of the rule were discussed in the British Parliament; an elaborate report was made on the subject in the House of Commons the same year, and was followed by the statutes of 6 Geo. IV., ch. 94, and 7 and 8 of Geo. IV., ch. 29, changing the rule, so as to allow factors to pledge the goods of their principals in certain cases. But the statute of 5 and 6 Vic., ch. 39, swept away the last vestige of the old rule.

It is a familiar rule, and heretofore recognized and applied by this Court, " That where one of two innocent parties must suffer, it must fall on him who has trusted most." Hellman *v.* Potter, 6 Cal., 13.

Who has trusted most in this case? The appellants so conducted the business that they induced everybody to believe Cutter & Co. to be the real owners; at all events, that they had no interest in the goods. Mr. Edward Flint, one of the plaintiff's agents, by whom the goods were delivered on the bill of lading, testified, that he did not know, and could not infer, Glidden & Williams were the owners of the lard. How, then, can Lucas, Turner & Co. be charged with trusting too much, or of being too short-sighted in the premises.

The appellants' case amounts to this : Their friends, H. F. Cutter & Co. order and select a lot of goods, which they pay for, and ship in their own vessel, under the guise of a deceptive bill of lading, so ingeniously framed as to defy their own agents, and after receiving freight and charges for the transportation, and after delivering the goods over to third parties, sue the parties receiving them for the proceeds! Such a claim has no founda-

tion in fair dealing or good sense. And it is respectfully submitted to this Court, that the decision of the judge below who tried the case was just and right, and ought to be affirmed.

BURNETT, J., delivered the opinion of the Court—MURRAY, C. J., concurring.

The plaintiffs, merchants of Boston, shipped three hundred kegs of lard to San Francisco, on the ship Goddess, one of their own line of packets, to be sold by Messrs. H. F. Cutter & Co., who were to receive one-half the net profits, in lieu of commission.

The bill of lading stated the goods were "shipped by order," and were to be delivered "to order or assigns," he or they paying the freight; and in case the freight was not paid within thirty days, a sufficiency was to be sold to pay freight and charges. The bill of lading was signed by plaintiffs for the captain, and the margin contained this statement, "Glidden & Williams' line California Packets, office, No. 39 Lewis Wharf, Boston. Agents in San Francisco, Flint, Peabody & Co." The bill of lading was enclosed to Messrs. H. F. Cutter & Co., without endorsement, and by Reynolds, one of the firm, pledged to defendants, with other bills of lading, to secure a loan of money made before the ship arrived. The defendants paid freight and charges on the lard, and then sold the same; and plaintiffs brought this suit to recover the amount received by defendants for the property. The Court found that defendants had no knowledge of the fact that plaintiffs were the owners of the lard.

The only question in the case is, whether the bill of lading, upon its face, and without endorsement, was sufficient to put the defendants upon inquiry as to the real owner of the property. The bill of lading was drawn in this manner, on purpose to conceal the fact of ownership from the agents, Flint, Peabody & Co., and the question is, whether the owners should not be responsible for all the consequences flowing from their own act. The goods being shipped "by order," and deliverable "to order or assigns," how were the agents, Flint, Peabody & Co., to know to whom to deliver the goods? And how could defendants know who were the real owners? The only proof of ownership was the possession of the bill of lading. Even had the real owner endorsed the bill, this would not have shown that fact, any more than the bare possession of the bill of lading, for the reason, that the name of the owner was not given, and any one, therefore, in possession, could assume the ownership, and endorse the bill accordingly. This, Messrs. H. F. Cutter & Co. did, and passed the property to defendants. And it is well remarked by defendants' counsel, that if they had searched the world round and round for the owners, with this bill of lading in their hands, surely Glidden & Williams were the very last persons they would have inquired for.

3

There was nothing in the bill of lading to put the defendants upon inquiry. The bill, upon its face, bore conclusive evidence of the intention to conceal the name of the owner, and to give the possessor of the bill of lading exclusive control over the property. And, as the owners did not wish to be known, it would certainly be very illogical to ask the defendants to ascertain that fact, for the protection of plaintiffs, and against their own will. There was nothing in the character of the business of H. F. Cutter & Co., to make them technical factors, and the defendants were not bound to know that they acted as factors in the particular case. This Court, in the case of Hutchinson v. Bours et al., has settled that question. As to the question, whether a factor can pledge the goods of his consignor, it is not necessary to de-cide. The reasoning of defendants' counsel on this point is certainly very forcible, and founded in common sense. This case may be a hard one upon the plaintiffs, but it is the result of their own misplaced confidence, and of their own design to conceal their own transactions from their regular agents in San Francisco.

Judgment affirmed.