## WRIGHT v. SOLOMON.

A FACTOR cannot pledge, as security for his individual debt, the goods of his principal consigned to him for sale.

This rule applies not only to "a technical factor"—that is, one whose only business is to sell goods consigned to him for that purpose—but also to a factor who at the same time does business on his own account.

*Hutchinson* v. *Bours* (6 Cal. 385) and *Horr* v. *Barker* (11 Cal. 393) and *Glidden* v. *Lucas*, (7 Cal. 26) limiting the rule that a "factor" cannot pledge to "a technical factor," etc., overruled.

Possession of personal property by a person engaged in business on his own account is only *prima facie* evidence of ownership, and does not prevail against the true owner except as to negotiable instruments, and whatever comes under the general denomination of currency.

The consent of the owner to a disposition of his property may be inferred from acts, as well as given in direct terms. It may be inferred when he gives such evidence of the authority of disposal as usually accompanies such authority, according to the custom of trade and the general understanding of business men.

The delivery of goods to a merchant engaged in the sale of similar articles is such evidence of authority to sell the same as to protect the purchaser from the possessor. The possession, under such circumstances, is evidence, not that the possessor is owner, but that he has authority from the owner to sell.

APPEAL from the Twelfth District.

Action for the delivery of personal property. Complaint in the usual form, with the proper statutory averments, alleging that plaintiff, on or about Nov. 4th, 1858, was owner and entitled to the possession of one hundred bales of gunny bags of the value of $4,000; that the same came into possession of defendant on that day, and that he wrongfully detains them after demand made, etc., to plaintiff's damage of $4,000. Prayer for possession, or the value in case delivery cannot be had.

The answer sets up two defenses: 1st, denying specifically all the allegations of the complaint; 2d, justifying the taking of the property under papers and process, regular on their face, issued to defendant (appellant) as United States Marshal for the Northern District of California, out of the United States Circuit Court, in the suit of *Elias E. Davison* v. *Isaac Swain*, in claim for the delivery of personal property—being the property in question—alleging service of the necessary papers on said Swain, the detention of the property by him, the defendant, for the period of five days,

Wright *v.* Solomon.

and thereupon no claim having been made, the delivery of it to the plaintiff therein : and alleging full compliance by him with all the provisions of the Practice Act of this State, sections ninety-nine to one hundred and ten.

The case was tried by the Court without a jury. Its findings were as follows :

" 1st. That on or about the first day of May, 1857, one E. E. Davison, of Boston, shipped and consigned to Wm. A. Darling, of San Francisco, the property which is the subject of this action, to sold by said Darling for his, Davison's account, on commission.

" 2d. That said property came to the possession of said Darling in September, 1857 ; that the same was the property of the said Davison, and of the value of $4,000.

" 3d. That on the third of September, 1857, said Darling placed said property on storage, in his own name, with Isaac Swain, then a keeper of a warehouse in San Francisco, and received a warehouse receipt therefor.

" 4th. That on the thirty-first of December, 1857, said Darling obtained a loan of $2,000 from the plaintiff, for which at that time he gave his note, bearing interest at two and one-half per cent. a month, and at the same time pledged said property as security therefor to the plaintiff, and endorsed and surrendered to the plaintiff the warehouse receipt by him then held for said property ; and the plaintiff on that day surrendered said receipt to the warehouse keeper, Swain, and obtained from him a new receipt, in his own name, for said property.

" 5th. That said property remained on storage in the name of, and under such pledge to, the plaintiff until Nov. 4th, 1858.

" 6th. That for some time prior to, and during the time of, the transactions already mentioned, the said Darling had been and was a merchant in the city of San Francisco. His business was mostly a commission business ; but he bought and sold some goods on his own account.

" 7th. That on Nov. 4th, 1858, the defendant was the Marshal of the United States for the Northern District of California, duly appointed and qualified, and on that day, by virtue of papers and process in his hands, duly issued out of the Circuit Court of the United States

Wright v. Solomon.

for the District of California, in and for the Northern District, in an action for claim and delivery of personal property—being the same property described in the complaint in this action—brought by said E. E. Davison against the said Swain, etc., the defendant took the said property from the possession of the said Swain at his warehouse in the city of San Francisco, in said Northern District, and at the same time paid, in the presence of said Swain, to his partner, the amount of storage due on said property.

" 8th. That within five days thereafter the said Swain did not, nor did the plaintiff in this action, require of the defendant the return of said property according to section one hundred and four of the Civil Practice Act of the State of California, or otherwise; and thereupon, after five days had fully elapsed, the defendant delivered the property to said Davison at the city of San Francisco.

" 9th. That all the acts and proceedings of the defendant in the execution of the said papers in his hands, the service of papers in the case, and the filing of the said papers and process, were in accordance with the provisions of the said Practice Act of California, made in respect of actions for the claim and delivery of personal property in force at that date.

" 10th. That from the time of making the loan to said Darling by the plaintiff, and down to the seizure and removal of the goods by the defendant, Swain was the agent of the plaintiff in the whole matter, but neither then or at any time until August, 1859, did the plaintiff or Swain set up any claim to the defendant for the said property; and demand was first made by plaintiff on defendant therefor about the time last mentioned.

" 11th. That at the time of the loan by him (plaintiff) to Darling, down to and for a long time after the seizure and removal of said property, the plaintiff was a general clerk of said Swain in his warehouse.

" 12th. That at the time of the commencement of the said suit of *Davison* v. *Swain* in the Circuit Court of the United States, down to and after November 20th, 1858, the following rule of the Circuit Court was in force in actions at law in said Court:

" RULE 56. In all cases not provided for in these rules or by the Acts of the Congress of the United States, the practice and forms

Wright *v.* Solomon.

of remedy in this Court shall conform, as far as practicable, to those prescribed for the Courts of this State by an act of the Legislature, passed April 29th, 1851, entitled "An Act to regulate proceedings in the Courts of this State," and another act of said Legislature, amendatory thereof, passed May 15th, 1854, provided that nothing in either of said acts shall be construed to authorize the enforcement of a merely equitable right by any action or proceeding on the common law side of this Court."

" 13th. That the amount due by Darling to the plaintiff upon said loan, as aforesaid, is $2,000, with interest at two and a half per cent. per month, since September 1st, 1858.

" 14th. That at the time of the commencement of this action, the property in question was not, nor was any part of it, in the possession, custody, or under the control of the defendant."

From these facts and premises, the Court found as a conclusion of law, that the plaintiff was entitled to a return of the property in the complaint described, and if return thereof could not be had, that the plaintiff was entitled to have and recover of and from the defendant $2,000, with interest thereon at the rate of two and a half per cent. per month, from the first day of September, 1858, amounting to the sum of $3,325 damages, with interest thereon from that date at the rate of two and a half per cent. per month until paid ; and it was by the Court ordered and adjudged that the plaintiff have judgment against the defendant in accordance with the above findings, as well also for costs.

From the judgment entered on these findings in favor of the plaintiff for $3,325, the defendant appeals.

*Eugene Casserly*, for Appellant.

William A. Darling, having received the property in question from Elias E. Davison for sale by him on commission as the factor of the latter, could not pledge the same to the respondent herein, so as to enable him to maintain this action against the appellant for taking and delivering said property to said Davison, the owner thereof.

The question is, can a factor pledge the goods of his principal

without his consent, so as to enable the pledgee to hold them as against the latter.

Although former decisions of this Court stand in the way of the position assumed by appellant, still those decisions are against all authorities both in England and America, and therefore, ought to be overruled; particularly, as the question involved relates to mercantile law. This Court has not hesitated in numerous recent instances to restore the jurisprudence of the State to its only true and lasting foundation of principle and authority, even at the cost of overturning many decided cases. Some of these instances are given. In mercantile law and law of chattels : *Aud* v. *Magruder*, (10 Cal. 282) overruling *Bryan* v. *Berry* (6 Id. 694) ; *Montgomery* v. *Tutt*, (11 Id. 307) overruling *Wild* v. *Van Valkenburg* (7 Id. 166) ; *Patrick* v. *Montader*, (13 Id. 434) overruling *Taaffe* v. *Josephson* (7 Id. 352) ; *Stevens* v. *Irwin*, (15 Id. 503) overruling *Bacon* v. *Scannell* (9 Id. 272). In law of real property : *Ferris* v. *Coover*, (10 Id. 589) overruling *Leese* v. *Clark* (3 Id. 17) ; *Pierce* v. *Robinson*, (12 Id. 46) overruling *Lee* v. *Evans* (8 Id. 424) ; *Gee* v. *Moore*, (14 Id. 472) overruling *Taylor* v. *Hargous* (4 Id. 273) ; *Hart* v. *Burnett*, (15 Id. 530) overruling *Welsh* v. *Sullivan* (8 Id. 165).

The decisions in this Court on the subject of a factor's right to pledge, are : *Hutchinson* v. *Bours* (6 Cal. 383) ; *Glidden* v. *Lucas* (7 Id. 26) ; and *Horr* v. *Barker* (11 Id. 393).

*Leet* v. *Wadsworth*, (5 Cal. 404) though referred to in the cases cited, was not properly a case between the factor's pledgee and the owner of the goods. Gallagher, the pledgor, was not strictly the factor of Leet, the plaintiff. He was his partner, (or at least his trustee) having the full legal title to the goods in his hands, bought by him with Leet's money, at his request, to be sold (probably) on their joint account. The case may have been well decided on its facts.

In *Hutchinson* v. *Bours*, (6 Cal. 383) the decision was, that goods might be held by the *bonâ fide* pledgee of the factors, who were also regularly engaged in trade as general merchants, buying and selling on their own account, especially in reference to the kind of merchandise in question.

In *Glidden* v. *Lucas*, (7 Cal. 26) the owner of the pledged property had sought to conceal the fact of his ownership, and the bill of lading transmitted by him to his factor bore upon its face (as this Court remarks) " conclusive evidence of the intention to conceal the name of the owner, and to give the possessor of the bill of lading exclusive control over the property." This, the Court says, was " the only question in the case." Though the doctrine of *Hutchinson* v. *Bours* is affirmed, it is only incidentally. The decision must be considered as turning upon the fact of the concealment by the owner of his right to the property, and his conduct in holding out to the world the factors as the true owners.

In *Horr* v. *Barker*, (11 Cal. 393) there was evidence also tending to show concealment by the owners of the property in question. The decision, however, does not notice the fact, and it must be regarded as affirming distinctly the doctrine of *Hutchinson* v. *Bours*, that a factor may pledge, unless he is a technical factor ; that is, a factor " whose only business is to sell consigned goods."

The doctrine of these cases is without support in the common law. There are a few fundamental principles of the common law, applicable to personal property, which govern this question.

1. The first is : that no man's right to his property can be divested without his consent.

2. No man can convey to another any better title than he has himself.

3. The act of an agent will not bind his principal, unless within the scope of his authority.

These principles are not less fundamental in the civil than in the common law. (2 Kent's Com. 324, 620 ; *Hoare* v. *Parker*, 2 T. R. 376 ; *Hartop* v. *Hoare*, 3 Atk. 44 ; *Saltus* v. *Everett*, 20 Wend. 275 ; *Root* v. *French*, 13 Id. 570 ; *Ash* v. *Putnam*, 1 Hill, 302.)

The exceptions to these principles are in favor of securities which are negotiable, as promissory notes ; or quasi-negotiable, as bills of lading, and are in the nature of the currency of trade, as is well said by a distinguished counselor, in 2 Bosw. 419–20. None of them affect the present question.

From these principles the deduction is inevitable, that a factor,

being an agent to sell his principal's goods, has no power to pledge them.

Such is the clear, settled law, from the earliest to the latest case in the books, whatever may have been, occasionally, the speculative opinions or *dicta* as to the hardship of the rule.    The first case is that of *Patterson* v. *Tash*, 2 Strange, 1178 (A. D. 1743).    No case in the reports is better supported by an unbroken and irresistible column of judicial authority, English and American. (*Daubigny* v. *Duval*, 5 T. R. 604 ; *McCombe* v. *Davis*, 6 East, 538 ; S. C. 7 Id. 5 ; *Pickering* v. *Busk*, 15 East. 38 ; *Warner* v. *Martin*, 11 How. U. S. 209 ; *Evans* v. *Potter*, 2 Gall. 13 ; *Mason* v. *Van Amringe*, 1 Mas. 442 ; *Rodriguez* v. *Hefferman*, 5 John's Ch. 417 ; *Kennedy* v. *Strong*, 14 Johns, 128 ; *Buckley* v. *Packard*, 20 Id. 421 ; *Stearns* v. *Wilson*, 3 Denio, 473 ; *Walther* v. *Wetmore*, 1 E. D. Smith, 25 ; *Kinder* v. *Shaw*, 2 Mass. 398 ; *Odiorne* v. *Maxcy*, 13 Id. 178 ; *Hoffman* v. *Noble*, 6 Met. 68 ; *Holton* v. *Smith*, 7 N. H. 446 ; *Skinner* v. *Dodge*, 4 Hen. & Munf. 432 ; *Howes* v. *Doddridge*, 1 Rob. Va. 143 ; *Benny* v. *Rhodes*, 18 Mo. 147 ; *Benny* v. *Pegram*, 18 Id. 191 ; *Bonito* v. *Mosquera*, 2 Bosw. 427.)

So, a factor cannot barter his principal's goods.    (*Guerrero* v. *Peile*, 3 B. & Ald. 617 ; 2 Kent's Com. 625, and cases cited.) Nor can he sell on credit, unless such is the usage.    (*Warner* v. *Martin*, 11 How. 225 ; 2 Kent, 622–3, and cases cited.)

That, in this case, the factor Darling had the bills of lading for the property, does not aid his pledge in any way.    That was long before his pledge to the respondent, which was made after he had warehoused the goods.    At all events, the bill of lading in his hands is not material, when, as in this case, it was put there in the usual course of trade to enable him to receive the property.    (1 Smith L. C. 897, notes to *Lickbarrow* v. *Mason*.)    It has over and over been decided that a factor cannot pledge the bill of lading, the dock warrant, etc., either alone or with the property. (*Newson* v. *Thornton*, 6 East. 17 ; *Martini* v. *Coles*, 1 M. & Selw. 140 ; *Williams* v. *Barton*, 3 Bing. 139 ; *Phillips* v. *Huth*, 6 M. & Wels. 572.) So also, as to his possession and transfer of the warehouse receipt. The same principle and the same rule apply.

Wright *v.* Solomon.

The distinction sought to be made out in *Hutchinson* v. *Bours* and *Horr* v. *Barker*, between a "technical factor" and a factor who does also some business on his own account, is not recognized in any of the authorities. (*Mc Combie* v. *Davies*, 6 East. 538; S. C. 7 Id. 5; *Newson* v. *Thornton*, 6 Id. 17; *Martini* v. *Coles*, 1 M. & Selw. 140, where the point was pressed by counsel, *arguendo; Wilkinson* v. *King*, 2 Camp. 355; *Baring* v. *Corrie*, 2 B. & Ald. 138; *Williams* v. *Barton*, 2 Bing. 139; *Phillips* v. *Huth*, M. & W. 572; *Kinder* v. *Shaw*, 2 Mass. 398.)

The distinction has as little foundation in principle as in authority. The only ground on which the right of a factor to pledge can be even plausibly urged is, that he is armed with certain *indicia* of ownership, as possession, bills of lading, warehouse receipts, dock warrants, etc. This argument applies with the same force to technical factors as to the other kind.

The distinctive vital principle of the rule that a factor cannot pledge, I take to be this. Pledging goods is a special transaction, not according to the usual course of business, but entirely outside of it. Hence, it is also outside of the protection extended by the law to the ordinary transactions of commerce; so that while he who buys buys, safely, he who takes a pledge does it at his peril, as respects the title of the pledgor.

From the same principle precisely flows the rule that a factor cannot barter—cannot sell on credit, unless allowed by the usage, etc. These are all exceptional dealings.

And see, as to the whole doctrine of a factor's power over his principal's goods and its limitations, 2 Kent's Com. 625; Story's Agency, secs. 78, 113, 225; Cross' Law of Lien, 621; Russell on Factors (Law Lib.) 56, 117–122, reviewing the English cases.

*D. W. Perley*, for Respondent, cited the former decisions of this Court in *Leet* v. *Wadsworth*, (5 Cal. 404) *Hutchinson* v. *Bours*, (6 Id. 383) *Glidden* v. *Lucas*, (7 Id. 26) and *Horr* v. *Barker*, (11 Id. 393).

FIELD, C. J. delivered the opinion of the Court—BALDWIN, J. and COPE, J. concurring.

That a factor cannot pledge, as security for the payment of his

individual debt, the goods of his principal consigned to him for sale, has been the established doctrine of the common law for more than a century.   It was first declared in *Patterson* v. *Tash* (2 Strange, 1178) as early as 1743, and has been uniformly adhered to ever since in the Courts of England, except where it has been modified by Acts of Parliament.   It is also the settled law in all our sister States of the Union, where the Legislature has not interfered to make a change.   In this State, without any legislative action on the subject, a limitation in the application of the doctrine to a special class of factors has been asserted by this Court, which we shall hereafter particularly notice.   The doctrine of the common law results from the fact that the factor is but an agent, and as such can only bind his principal when his acts are within the scope of his authority.   A power to sell for the benefit of his principal, can in no way be stretched into a power to pledge for his own benefit. Nor does it make any difference whether the party taking the pledge was ignorant as to the extent of the factor's authority, or that the factor was not the real owner of the property.   " Whoever deals with an agent constituted for a special purpose," says Kent, " deals at his peril, when the agent passes the precise limits of his power."   (2 Com. 621.)   " The doctrine," says the same distinguished jurist, " that a factor cannot pledge, is sustained so strictly that it is admitted that he cannot do it by indorsement and delivery of the bill of lading, any more than by delivery of the goods themselves.   To pledge the goods of the principal is beyond the scope of the factor's power ; and every attempt to do it under color of a sale, is tortious and void.   If the pawnee will call for the letter of advice, or make due inquiry as to the source from whence the goods came, he can discover (say the cases) that the possessor held the goods as factor, and not as vendee ; and he is bound to know, at his peril, the extent of the factor's power."   (See *Daubigny* v. *Duval*, 5 T. R., 604 ; *McCombie* v. *Davies*, 6 East. 538 ; 7 Id. 5 ; *Pickering* v. *Busk*, 15 Id. 38 ; *Warner* v. *Martin*, 11 How. U. S. 224 ; *Buckley* v. *Packard*, 20 Johns. 421; *Stearns* v. *Wilson*, 3 Denio, 476 ; *Kinder* v. *Shaw*, 2 Mass. 398 ; *Hoffman* v. *Noble*, 6 Met. 74 ; *Holton* v. *Smith*, 7 N. H. 446 ; *Skinner* v. *Dodge*, 4 Hen. and Munf. 432 ; *Howes* v. *Doddridge*, 1 Rob. Va. 143 ; *Benny* v. *Rhodes*, 18 Mo. 147 ; and *Benny* v. *Pegram*, Id. 191.)

The limitation in the application of the doctrine in this State to which we have referred, was first distinctly asserted in *Hutchinson* v. *Bours* (6 Cal. 385). It was there held that the doctrine is only applicable where the party pledging is "technically a factor," that is, "where his only business is to sell goods consigned to him for that purpose." In *Glidden* v. *Lucas* (7 Cal. 26) the same limitation is recognized, and in *Horr* v. *Barker* (11 Cal. 393) it is directly affirmed. In none of these cases are any authorities cited by the Court in support of the limitation. In the last case, Mr. Justice Burnett states that the harshness and injustice of the rule, as originally established in England, induced the Court in *Hutchinson* v. *Bours* to confine the rule to a technical factor. But Justices Ellenborough and Le Blanc, from whose observations in *Martini* v. *Coles* (1 Maule & Selwyn, 145) Mr. Justice Burnett concluded that they considered the rule a hard one, expressly held that the law was too firmly settled against the right of the factor to pledge to be disturbed by the Court. "Perhaps," said Ellenborough, "it would have been as well if it had been originally decided that where it was equivocal whether a person was authorized to act as principal or factor, a *pledge* made by such person free from any circumstances of fraud was valid. *But it is idle now to speculate upon this subject, since a long series of cases has decided that a factor cannot pledge.*"

The case of *Martini* v. *Coles* was decided in 1813, and with "the long series of cases" which preceded and have since followed it, all recognizing and affirming the rule, it may be said with equal truth now as then, that it is "idle to speculate" as to any different rule which might have been originally established. Judges of great distinction have not hesitated to declare their approbation of the existing rule. Thus, Mr. Chief Justice Abbott, in *Quieroz* v. *Trueman*, (3 Barn. & Cress. 349) expressed the opinion that "it is one of the greatest safeguards which the foreign merchant has in making consignments of goods to be sold" in England. And in the same case, Mr. Justice Bayley said, that he could not help thinking that the rule had operated much to increase the foreign commerce of the kingdom, by holding out to consignors that if the factor went beyond the authority vested in him, it should not work a prejudice

6

to his principal. "I entirely concur," continued the Justice, "in saying that in my judgment this, as a measure of policy, ought not to be altered. The rule is founded upon a very plain reason, viz: that he who gives the credit should be vigilant in ascertaining whether the party pledging has or has not authority so to deal with the goods. That knowledge may always be obtained from the bill of lading and letters of advice."

Whatever doubts may have been expressed by different Judges as to the expediency of the rule against the power of factors to pledge, there have been none as to the existence of the rule as we have stated it. It is as well settled as any rule of law can possibly be, and in no instance have we found any departure from it, except in cases cited from this Court. The limitation sought in those cases to be engrafted upon the doctrine—in other words, the distinction sought to be made between "a technical factor," that is, one whose "only business is to sell goods consigned to him for that purpose," and a factor who at the same time does business on his own account—is not recognized in any of the authorities in England or America, but is repudiated, either expressly or impliedly, in all of them, wherever the point arises. In *Martini* v. *Coles*, which we have already referred to, the factor Vos was a general merchant, and as such had been in the habit of employing the defendants as brokers in the sale of West India produce. The plaintiff consigned to him a quantity of coffee for sale, and sent him a bill of lading for the same in the usual form, providing for the delivery of the coffee to him or his assigns, he or they paying freight. The factor indorsed the bill of lading, and delivered the goods to the defendants; and on the faith of these and other goods placed in their hands, they advanced various sums to him. And at the time, they had no knowledge that the factor was not the owner of the coffee. Trover having been brought for the coffee, the defendants urged that, as the factor was also a general merchant, and as such had usually employed them, and as the bill of lading was made out to himself, he might reasonably be mistaken for the owner of the goods. But the Court, per Le Blanc, J., said: "Whether it might not originally have better answered the purposes of commerce to have considered a person in the situation of Vos, having the apparent symbol of

property, as the true owner in respect of that person who deals with him under an ignorance of his real character, is a question upon which it is now too late to speculate, since it has been established by a series of decisions that a factor has no authority to pledge, whether the person to whom he pledges has or has not a knowledge of his being factor. Here Vos was clearly factor for the plaintiff; and the circumstance of the goods having been made deliverable by the bill of lading to Vos or his assigns, cannot make any difference; since it conveyed to him no farther authority over the goods, than the party who consigned them intended to clothe him with."

In *Kinder* v. *Shaw*, (2 Mass. 398) the goods of the plaintiffs were placed for sale with one Carter, who kept a retail shop. To raise money, Carter pledged the goods, with other goods of his own property, to the defendants, who were ignorant of the plaintiff's interest. Trover having been brought for the goods, the defendants argued that as Carter was not known to them as the factor of the plaintiffs, and as they had no ground to suspect the goods to be the property of the plaintiffs or of any one else other than Carter, who kept an open shop in which these goods were exposed to sale with his own, they had a right to treat with him as the real owner. But the Court gave judgment for the plaintiffs, Mr. Chief Justice Parsons observing, " that the Court, considering the question of importance to the mercantile part of the community, had looked into the case with attention, and were all of opinion that a factor had no authority to pawn goods which have been intrusted to him for sale. The rights of the principal and factor depend on the law merchant, which has been adopted by the common law. By this law, a factor is but the attorney of his principal, and he is bound to pursue the powers delegated to him."

Numerous other cases to the same effect might be cited, where the factor was also engaged in business on his own account. In this State, there are few persons acting as factors who do not at the same time have some business of their own in buying and selling; and the practical effect of the decision in *Hutchinson* v. *Bours*, if sustained, would be to establish as a general rule that a factor may pledge without authority the goods of his principal for his own debt,

and to make the very limited class of " technical factors " a mere exception to that rule.

The principle upon which the decision in *Hutchinson* v. *Bours* proceeds, as we infer from the facts of the case, is, that the possession of personal property by a person engaged in business on his own account is sufficient evidence of his ownership to protect parties dealing with him as the real owner. For this principle there is no warrant in the law. Possession of personal property is only *prima facie* evidence of ownership, and never prevails against the true owner, except with reference to negotiable instruments, and whatever comes under the general denomination of currency. " The law is clearly laid down," says Le Blanc, J., in *Pickering* v. *Busk,* (15 East, 38) " that the mere possession of personal property does not convey a title to dispose of it, and which is equally clear, that the possession of a factor or broker does not authorize him to pledge." The principle that no one can be divested of his property without his consent, and the maxim that no one can transfer a better title than he has himself, control all questions arising as to property of which a transfer is attempted, with the exceptions stated. The effect of possession as evidence of ownership is subordinate to these principles. ( *Covill* v. *Hill,* 4 Denio, 327.) The consent of the owner to a disposition of his property may be inferred from acts, as well as given in direct terms. It may be inferred when the owner gives such evidence of the authority of disposal as usually accompanies such authority according to the custom of trade and the general understanding of business men. Thus, the delivery of goods to a merchant, engaged in the sale of articles of a similar kind, is such evidence of the bestowal of the right to dispose of the same as to protect the purchaser from the possessor. The possession under such circumstances is evidence, not that the possessor is owner, but that he has received authority from the owner to sell. The authority to pledge would not be inferred from possession in such case; for to pledge is a special transaction, outside of the usual course of business, and consequently, outside of the protection extended to ordinary transactions of commerce.

From the views expressed and the authorities cited, it follows

that the limitation asserted in *Hutchinson* v. *Bours* and *Horr* v. *Barker* cannot be maintained. Those decisions are anomalous in their character, and in conflict with the law upon the authority of factors, as it is recognized by the United States Courts and the Courts of every State of the Union, where the Legislature has not interfered to make a change. We do not hesitate to overrule them; for it is of the highest importance to those engaged in commerce in this State, that the decisions of this Court on commercial questions should be in conformity with the adjudications on like questions of the Courts of the principal commercial communities of the world.

The disposition of the question raised as to the authority of Darling to pledge the goods, for the recovery or value of which the present action is brought, renders it unnecessary to consider the other points made by the appellant. Upon the facts found, the judgment of the District Court must be reversed, and that Court directed to enter judgment for the defendant.

Ordered accordingly.